AYC
for
AUSA Deshony
4/12/19

# UNITED STATES DISTRICT COURT
## for the
### Southern District of California

APR 1 6 2019

In the Matter of the Search of )
*(Briefly describe the property to be searched or identify the person by name and address)* )
)  Case No.
(1) NAOMI Cellular Phone, Model Mini, IMEI: ) 
359345085408702 )
)

**19MJ9187**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1 (incorporated herein)

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-1 (incorporated herein)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Secs. 952, 960, and 963; 21 U.S.C. Sec. 843(b); 18 U.S.C. Sec. 2 | Importation of Methamphetamine; Conspiracy to Import Methamphetamine; Unlawful Use of a Communication Facility; Aiding and Abetting |

The application is based on these facts:

See attached Affidavit (incorporated herein)

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: ____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Matthew Ladisa, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4/16/19

*Judge's signature*

City and state: El Centro, California     Hon. Ruth Bermudez Montenegro, U.S. Magistrate Judge
*Printed name and title*

AVC
for
AUSA Deshon
4/12/19

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br><br>(1) One NAOMI Cellular Telephone, Model Mini, IMEI: 359345085408702; and<br><br>(2) One LQ Smart Watch, Model S1, BTIMEI: 358358103661123. | **AFFIDAVIT OF SPECIAL AGENT MATTHEW LADISA IN SUPPORT OF A SEARCH WARRANT** |

I, Special Agent Matthew Ladisa, having been duly sworn, declare and state as follows:

## I.

## INTRODUCTION

1. I make this affidavit in support of an application for a warrant to search the following electronic devices:

NAOMI Cellular Phone,
Model Mini
IMEI: 359345085408702
(**Target Phone**); and

LQ Smart Watch,
Model S1
BTIMEI: 358358103661123
(**Target Watch**) (collectively, the **Target Devices**)

and seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960, and 963, Unlawful Importation of a Controlled Substance (and

Conspiracy to do the same); Title 18, United States Code, Section 2, Aiding and Abetting the Unlawful Importation of a Controlled Substance; and Title 21, United States Code, Section 843(b), Unlawful Use of a Communication Facility (the **Target Offenses**).

2. The **Target Devices** were seized from Defendant Jose Barraza (**Defendant**) at the time of his arrest for Importation of Methamphetamine on February 19, 2019, at the Andrade Port of Entry. The **Target Phone** was found in Defendant's right pants pocket, and Defendant was wearing the **Target Watch** at the time of his arrest. The **Target Devices** are currently stored in the Seized Property Vault located at 2051 N. Waterman Avenue in El Centro, California.

3. The search of the **Target Devices** supports an investigation and prosecution of Defendant for the Target Offenses. Based on the information below, there is probable cause to believe that a search of the **Target Devices**, as described in Attachments A-1 and A-2 will produce evidence of the Target Offenses, as described in Attachments B-1 and B-2.

4. The following is based upon my experience and training, investigation, and consultation with other law enforcement agents and officers experienced in narcotics violations, including the Target Offenses. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because I make this affidavit for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only sets forth those facts believed to be necessary to establish probable cause. Dates and times are approximate, and refer to Pacific Standard Time (PST) unless otherwise specified.

## II
## AFFIANT'S EXPERIENCE AND TRAINING

5. I have been employed as a Special Agent with HSI since June of 2016. I am currently assigned to the ICE/HSI Office of the Assistant Special Agent in Charge, in El Centro, California. I am a graduate of the Federal Law Enforcement Training Center in

2

Glynco, Georgia. During the training, I learned how controlled substances are manufactured, consumed, packaged, marketed, and distributed. I have interviewed and operated informants, arrested and interviewed subjects, conducted physical surveillance, and utilized electronic and video surveillance. I have also worked with and consulted numerous agents and law enforcement officers who have investigated drug trafficking. During my experience in law enforcement, I have had training in narcotics investigations. I have participated in numerous debriefings of informants who had personal knowledge regarding narcotics trafficking. Additionally, I have had training in many aspects of drug investigations including undercover operations, conducting surveillance, and arrests.

6. I am a federal law enforcement officer within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure. I am authorized under Rule 41(a) to make applications for search and seizure warrants. I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

7. I am familiar with narcotics traffickers' methods of operation including the distribution, storage, and transportation of narcotics and the collection of money proceeds of narcotics trafficking and methods of money laundering used to conceal the nature of the proceeds. I have had training in investigations regarding the unlawful importation, possession, and distribution of controlled substances, as well as conspiracies associated with criminal narcotics, in violation of Title 21, United States Code, Sections 952, 960 and 963.

8. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have learned that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, smart watches, pagers, and portable radios to maintain communications with co-conspirators in order to further their criminal activities. Conspiracies involved in the smuggling and trafficking of narcotics generate many types of evidence including, but not limited to, cellular phone-related evidence such as voice-mail messages referring to the

3

arrangements of travel and payment, names, photographs, text messaging, and phone numbers of co-conspirators. Typically, load drivers smuggling narcotics across the border from Mexico into the United States are in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on where and when to deliver the controlled substances.

9. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Drug traffickers will use cellular/mobile telephones and/or smart watches because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b. Drug traffickers will use cellular/mobile telephones and/or smart watches because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

    c. Drug traffickers and their accomplices will use cellular/mobile telephones and/or smart watches because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

    d. Drug traffickers will use cellular/mobile telephones and/or smart watches to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

    e. Drug traffickers will use cellular/mobile telephones and/or smart watches to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

    f. Drug traffickers and their co-conspirators often use cellular/mobile telephones and/or smart watches to communicate with load drivers who transport their narcotics and/or drug proceeds.

    g. The use of cellular telephones and other mobile communication devices (e.g., smart watches) by conspirators or drug traffickers tends to generate evidence that is

4

stored on the device, including, but not limited to emails, text messages, photographs, audio files, videos, call logs, address book entries, IP addresses, social network data, and location data.

10. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone and/or smart watch would likely be stored on any SIM Card that has been utilized in connection with that device.

11. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I have learned that cellular/mobile telephones and/or smart watches can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, based upon my training, education, and experience investigating these conspiracies, I have learned that searches of cellular/mobile telephones and/or other mobile communication devices yields evidence:

   a. tending to indicate efforts to import methamphetamine, or other federally controlled substances from Mexico into the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the importation of methamphetamine, or other federally controlled substances from Mexico into the United States;

5

c. tending to identify co-conspirators, criminal associates, or others involved in the importation of methamphetamine, or other federally controlled substances from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or other federally controlled substances from Mexico into the United States;

e. tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## III

## STATEMENT OF PROBABLE CAUSE

### A. DEFENDANTS' ARREST

12. On February 19, 2019, at approximately 6:55 a.m., Defendant Jose Barraza applied for entry to the United States via a vehicle lane at the Andrade Port of Entry in Andrade, California. At the time, Defendant was driving a green Chevrolet Silverado bearing California license plate S803615.

13. Customs and Border Protection Officer (CBPO) Mata was conducting primary inspections during this time. Defendant presented CBPO Mata with an Idaho driver's license and said he had nothing to declare he was bringing into the United States. Defendant then added that the truck he was driving was a loaner and had had been in the area for about three months. CBPO Mata asked Defendant what time he had to be at work and Defendant said he needed to be at work at 8:00 a.m. and that the people at the port of entry were making him late. During this inspection, CBPO Mata inspected the outside of the vehicle and tapped the spare tire underneath the vehicle. The spare tire sounded "hard" when it was tapped. As a result, CBPO Mata referred Defendant to an area for secondary inspection.

14. In the secondary inspection lot, CBPO Terrill and his trained human-narcotics detection dog ("HNDD") screened the outside of the vehicle. The HNDD alerted to the spare tire.

15. In the secondary inspection area, CBPO Lee conducted a physical inspection of the Chevrolet Silverado and removed 71 packages from the spare tire, and an additional 60 packages from the truck's gas tank. These packages weighed a total of 65.78 kilograms (145.02 pounds) and the substance inside them tested positive for the properties of methamphetamine. CBPOs also seized the **Target Phone** from Defendant's pants pocket and seized the **Target Watch**, which he was wearing at the time of his arrest.

## B. DEFENDANT'S BORDER CROSSING HISTORY

16. After not crossing the border for approximately 18 months, Defendant began crossing between the United States and Mexico with a high level of frequency on December 17, 2018. In total, he crossed the border approximately 40 times between December 17, 2018 and February 19, 2019.

17. The vast majority of Defendant's crossing during the two month period were via pedestrian lanes. On February 8, 2019, he began crossing the border in the Chevrolet Silverado he was driving on the day of his arrest. He crossed the border in the Silverado on February 8, 9, 10, 13, and 16 before he was arrested in it.

18. Based on my experience investigating narcotics smugglers, Defendant may have used the **Target Devices** to coordinate with the other parties involved regarding the importation of methamphetamine. I believe that recent calls made and received, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, text messages, email messages, messages and posts from social networking sites, pictures, and other digital information may be stored in the memory of the **Target Devices**. This data may include information that is relevant to Defendant's narcotics trafficking activities, including identifying other persons involved in their narcotics trafficking activities.

19. Drug trafficking conspiracies require intricate planning and coordination. This often occurs days, weeks, or even months prior to the actual importation of the drugs into

7

the United States. All parties involved communicate with one another in efforts to ensure success in getting their valuable cargo to its destination within the United States.

## C. THE TARGET DEVICES

20. I have researched the **Target Watch** and learned that the particular model of smartwatch contains both a SIM card and up to a 32 gigabyte memory card. I have also learned that the particular model may be used to conduct phone calls, take pictures, and display message notifications. Accordingly, the **Target Watch** performs many of the same functions as a cellular telephone.

21. Further, the **Target Phone** does not appear to be a "smartphone." This leads me to believe it is not capable of pairing and the **Target Watch** likely contains calls, text messages, and other information associated with a different phone.

22. Accordingly, I respectfully request permission to search the **Target Devices** for information beginning on November 19, 2018, up to and including February 19, 2019.

## III

## METHODOLOGY

23. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of

8

the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

24. Following the issuance of this warrant, I will collect the **Target Devices** and subject it to analysis. All forensic analysis of the data contained within the **Target Devices** and memory card(s) will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

25. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## IV

## CONCLUSION

26. Based on all of the facts and circumstances described above, my training and experience, and consultations with other law enforcement officers, there is probable cause to conclude that Defendant utilized the **Target Devices** to facilitate the commission of the Target Offenses.

27. Given the radical change in Defendant's border crossing patterns after mid-December 2018, probable cause exists to believe that evidence of the aforementioned offenses exists on the **Target Devices** for the period of November 19, 2018 to February 19, 2019.

28. Because the **Target Devices** were promptly seized during the investigation of Defendant's drug trafficking activities and has been securely stored, there is probable cause

to believe that evidence of illegal activity committed by the Defendants continues to exist on the **Target Devices**.

29. Based upon my experience and training, consultation with other agents in narcotics investigations, consultation with other sources of information, and the facts set forth herein, I believe that the items to be seized set forth in Attachments B-1 and B-2 (incorporated herein) are likely to be found in the property to be searched described in Attachments A-1 and A-2 (incorporated herein). Therefore, I respectfully request that the Court issue a warrant authorizing me, or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachments A-1 and A-2, and seize the items listed in Attachments B-1 and B-2.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Special Agent Matthew Ladisa
Homeland Security Investigations

Sworn to and subscribed before me this ___16th___ day of April, 2019.

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES MAGISTRATE JUDGE